IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

EMMETT R. CLENDENIN,
BRENDA K. CLENDENIN

        Plaintiffs,

v.                                  CIVIL ACTION NO.  2:09-cv-00557

WELLS FARGO BANK, N.A.,
d/b/a WELLS FARGO HOME
MORTGAGE,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendant's Motion to Dismiss Second Amended Complaint [Docket 22].  The Motion is **GRANTED in part and DENIED in part**.

**I. Facts**

*A. Factual History*

This case involves claims by a borrower against a creditor for unlawful lending practices and breach of contract.  The Complaint alleges the following facts.  In July 2005, the plaintiffs, Emmet and Brenda Clendenin, became interested in purchasing a home in Beckley, West Virginia.  Neither had previously purchased a home.  Both lack extensive formal education.  Employees of the defendant, Wells Fargo Bank ("Wells Fargo"), encouraged the Clendenins to seek home financing through Wells Fargo.[1]  Brenda Clendenin submitted a loan application over the telephone.  She

---

[1]     The Clendenins both worked at a local restaurant where Wells Fargo employees
(continued...)

expressed interest in a fixed-rate mortgage. Soon afterwards, Wells Fargo pre-approved the Clendenins for a fixed-rate home loan. Wells Fargo "never told [the Clendenins] that there would or could be more than one loan." (Compl. ¶ 10.)

### 1. *The Loan*

After pre-approving the Clendenins over the phone, Wells Fargo "called the plaintiffs a final time to direct [them] to closing at a law office in Beckley." (*Id.* ¶ 11(a).) At closing, but prior to finalization of the loan, the Clendenins learned their agreement with Wells Fargo would consist of two loans. Although they had not yet formally committed to any agreement with Wells Fargo, the Clendenins "were compelled to proceed with closing despite learning that there were two loans instead of one because they had committed to a purchase contract and had no opportunity to secure other financing." (*Id.* ¶ 11(d).) Wells Fargo did not explain the specific terms of the loans to them prior to their entering into the contract. "[I]t was not until the date of the first rate change," the Clendenins assert, "that [they] realized they had been financed into an ARM on the primary loan and into a very high interest rate on the secondary loan." (*Id.* ¶ 12.)[2] Furthermore, Wells Fargo obtained an out-of-area appraiser to appraise the property. After the closing of the loan, the Clendenins learned of unexpected expenses. They realized that, of the two loans with Wells Fargo, "the larger loan contained a prepayment penalty rider, which charged the plaintiffs 1% of the original principal amount if the loan is paid off within the first two years." (*Id.* ¶ 14.)

---

[1](...continued)
dined.

[2] "ARM" stands for "Adjustable Rate Mortgage." Under the terms of an ARM, the loan will usually begin at a low interest rate, which will remain fixed for a set period of time. After that period of time, however, the terms of the loan will be subject to change.

-2-

### 2. *The Default*

The Clendenins "made timely payments on the loan for several months." (*Id.* ¶ 15.) But, in 2007, Mr. Clendenin's health declined, preventing him from working. At the same time, the interest rate of the Clendenins' larger loan—under the terms of the loan agreement—increased. The Clendenins struggled to make their payments. They contacted Wells Fargo, seeking to restructure their loan. Wells Fargo did not respond. Collection agents acting on behalf of Wells Fargo did, however, repeatedly call the Clendenins, demanding payment and threatening foreclosure. The Clendenins "offered to make partial payments or pay whatever they could afford." (*Id.* ¶ 19(a).) They were told in response that "their payments would not be accepted and that they should not send in payments if that was the case." (*Id.* ¶ 19(b).) Wells Fargo commenced foreclosure.

The Clendenins assert that Wells Fargo exercised bad faith and violated debt collection laws. They contend that "[t]hroughout the course of servicing the Plaintiffs' loan, the Defendant assessed multiple property inspection fees in an effort to increase the Plaintiffs' indebtedness and push them toward foreclosure." (*Id.* ¶ 21.) Furthermore, they assert that Wells Fargo "assessed and collected inspection fees for multiple consecutive months." (*Id.* ¶ 22.) And, despite the fact that their deed of trust prohibited Wells Fargo from assessing attorney fees to the Clendenins, it "assessed and collected" such fees. (*Id.* ¶ 23(b).) As a result, the Clendenins assert, they have "suffered economic loss and fear of loss of home, as well as stress and worry and annoyance and inconvenience." (*Id.* ¶ 24.)

*B. Procedural History*

On February 24, 2009, the Clendenins filed suit in the Circuit Court of Kanawha County, West Virginia, seeking legal and equitable relief. The defendants removed the case to federal court on May 18, 2009, based on diversity jurisdiction.

The Clendenins amended their Complaint on August 27, 2009, and again on September 4, 2009.[3] The Complaint asserts three causes of action: unconscionable inducement (Count I), illegal debt collection (Count II), and breach of contract (Count III). The Complaint also contains a request for equitable relief in Count IV.

Wells Fargo filed a Motion to Dismiss on September 21, 2009. By its Motion, Wells Fargo asks the court to dismiss "those portions of Count III . . . [that] assert breach of contract based on an alleged obligation to accept a loan modification and all of Count IV," on the ground that these claims fail to state a claim upon which relief can be granted. (Mot. Dismiss 1.) The Clendenins filed a Response on October 7, 2009, and Wells Fargo filed a Reply on October 27, 2009. The court possesses jurisdiction pursuant to 28 U.S.C. § 1332.

**II. Motion to Dismiss Standard**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." On a motion to dismiss under Rule 12(b)(6), a court must accpt the facts of the complaint as true and view them in the light most favorable to the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

---

[3] For ease of reference, I refer to the Second Amended Complaint in the text as "the Complaint."

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### III. Discussion

Wells Fargo seeks dismissal of Counts III and IV of the Complaint. Wells Fargo asserts that "[d]istilled to their essence, Counts III and IV seek to rewrite Plaintiffs' loan." (Mem. Supp. Mot. Dismiss 2.) As explained below, the court **GRANTS** the motion to dismiss Count III. The motion to dismiss Count IV, however, must be **DENIED**.

*A. Count III*

Count III asserts two claims under the heading "Breach of Contract": a breach-of-contract claim and a claim that Wells Fargo breached the covenant of good faith and fair dealing. The Clendenins contend Wells Fargo breached "the contract and its duty of good faith" in four respects: (1) by "[a]ssessing and collecting illegal [and] unauthorized fees"; (2) by "[d]iscouraging Plaintiffs from providing payments for their account"; (3) by "[c]asuing anxiety and fear in the Plaintiffs by ignoring the Plaintiffs' pleas for assistance and by pursuing foreclosure despite the Plaintiffs' continuing to make payments and willingness to make future payments"; and (4) by "[s]ervicing the plaintiffs' loan in bad faith." (*Id.* ¶ 34.)

Wells Fargo contends that both claims in Count III are deficient. I address each claim in turn.

### *1. Express Breach of Contract*

In its Motion to Dismiss, Wells Fargo asserts that the Complaint "fails to identify any provision of any loan agreement—in either general or specific terms—[that] required Wells Fargo to agree to modify Plaintiffs' loan or to forego its right to foreclose on the collateral." (Mem. Supp. Mot. Dismiss 5.) It contends that the right to foreclose is not conditioned "on any obligation to consider or assent to any loan modification arrangement." (*Id.*) Furthermore, Wells Fargo contends, the Complaint identifies "no separate agreement with respect to a loan modification or a forbearance of Wells Fargo's right to foreclose." (*Id.*) As such, Wells Fargo argues that the Clendenins "fail to allege that they had an express contractual right to a loan modification or any right to abrogate Wells Fargo's right to foreclose on the property," and that any claim based on express breach of contract must be dismissed.

The Clendenins contend that Wells Fargo mischaracterizes their claim. They maintain that they "do not claim that [Wells Fargo] was *required* to enter into a loan modification with the Plaintiffs." Rather, they assert that "by discouraging payments, assessing unauthorized fees thereby increasing the alleged indebtedness, and then exercising its discretionary right to pursue foreclosure in the face of the Plaintiffs' willingness to make payments, the Defendant breached contract terms . . . not to interfere with the Plaintiffs' right to receive the benefit of the contract." (Pls.' Resp.5.)

Assuming that Count III asserts a claim for express breach of contract, it is clear such a claim is insufficiently pleaded. Complying with Rule 8 is simple. To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*,

550 U.S. at 570. Courts (and defendants) should not be forced to sift through a complaint in a search for a cause of action. Merely painting a defendant as a wrongdoer with colorful adjectives, without factual support, is not enough to survive a motion to dismiss.

Here, the Clendenins do not offer factual support for their claims, and thus do not plausibly state a ground for relief. The Clendenins assert that Wells Fargo breached "the contract." (Compl. ¶ 34.) The court is left to guess that by "the contract," the Clendenins mean the loan agreement with Wells Fargo. The Clendenins then list four ways in which Wells Fargo breached "the contract." They assert that Wells Fargo "[a]ssess[ed] and collect[ed] illegal and or [sic] unauthorized fees"; "[d]iscourag[ed] Plaintiffs from providing payments for their account"; "[c]aus[ed] anxiety and fear in the Plaintiffs by ignoring the Plaintiffs' pleas for assistance and by pursuing foreclosure despite the Plaintiffs' continuing to make payments and willingness to make future payments"; and "[s]ervic[ed] the plaintiffs' loan in bad faith." (Compl. ¶ 34.)

Looking at each of these allegations, the Clendenins have clearly failed to support their claims with anything "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Clendenins do not identify what provisions in "the contract" were breached, what fees were illegal or unauthorized, when or how Wells Fargo discouraged payment, or how Wells Fargo serviced their loan in bad faith. Furthermore, they have not identified any contractual language prohibiting Wells Fargo from "[c]ausing anxiety and fear" as a result of exercising its contractual rights.

Importantly, this is not a situation where the defendant has exclusive dominion over the facts. Many, if not all, of the facts needed to properly support these claims are, or should be, within the Clendenins' control. The Clendenins presumably have a copy of the loan agreement, as well as

records of what fees they have paid and what payments were discouraged. The Clendenins should not need discovery to uncover these basic facts, making the absence of such facts in the Complaint all the more troubling.

The court is aware that the Clendenins have twice amended the Complaint. Wells Fargo, however, has not challeneged the sufficiency of their pleading in this respect. Count III is therefore **DISMISSED without prejudice**. The court will allow the Clendenins one last opportunity to amend the Complaint to meet the requirements of Rule 8.

### *2. Breach of Implied Covenant of Good Faith and Fair Dealing*

Next, Wells Fargo asserts that the Clendenins' claim for breach of the implied covenant of good faith and fair dealing also lacks merit. Wells Fargo contends that West Virginia does not recognize an independent claim based upon the implied covenant of good faith and fair dealing. Instead, such a claim must be based on express contractual provisions. Wells Fargo maintains that "[a]lthough [the Clendenins] may have wanted a modified payment [plan], there is no factual or legal basis for their conclusory assertion that they had an implied contractual right to a modification of the obligations they assented to in the loan agreement." (Def. Mem. Supp. Mot. Dismiss 7.) And, it argues, "although [the Clendenins] may prefer not to have foreclosure as a remedy for default, their concocted attempt to disallow foreclosure as a collection remedy is inconsistent with the express terms of the loan agreement to which [they] assented." (*Id.* at 7-8.)

The Clendenins assert that their claim based on breach of the implied covenant of good faith and fair dealing is not a stand-alone claim. Rather, they maintain, it is part of their "breach of contract" claim. "Among the breaches alleged," they assert, "the Plaintiffs claim that the Defendant

breached its implied contractual duty of good faith and fair dealing by interfering with the Plaintiffs' right to the benefits of the contract." (Pls.' Resp. Mot. Dismiss 8.)

Again, the court is left to go mining through the Complaint in search of a cause of action. Wells Fargo correctly states that West Virginia does not recognize a stand-alone cause of action for breach of implied covenant. *Highmark W. Va., Inc., v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007). Because West Virginia does not permit a stand-alone claim for a breach of the covenant of good faith and fair dealing, this claim will live or die by the breach-of-contract claim in Count III. Because that claim has been dismissed without prejudice, this claim must likewise be **DISMISSED**. The Clendenins may, however, replead this aspect of Count III, should they choose to once again amend the Complaint.

  *B. Count IV*

Wells Fargo also challenges the sufficiency of Count IV. By this Count, the Clendenins assert that Wells Fargo has the ability to "enforce its right to repayment of the debt through means other than the forfeiture of Plaintiffs' home"; that Wells Fargo "is seeking forfeiture of the equity in Plaintiffs' home"; and that Wells Fargo "has refused to exercise its rights to repayment through alternative means, such as through the loan modification, and instead ha[s] wrongfully sought foreclosure on Plaintiffs' home." (2d Am. Compl. ¶¶ 37-40.)

Wells Fargo argues that Count IV must be dismissed. It asserts that "[i]n connection with their request for a new implied contractual term, Plaintiffs make bald assertions that equity requires Wells Fargo to pursue a loan modification before it may foreclose on Plaintiffs' property, notwithstanding that they are admittedly in default." (Mem. Supp. Mot. Dismiss 8.) The Clendenins counter that Count IV is merely a claim for equitable relief for wrongful foreclosure. They contend

that Wells Fargo "pursued foreclosure after assessing illegal fees and charges and discouraging the Plaintiffs from making payments toward their obligation when they were willing to do so." (Pls.' Resp. 9.)

Rather than stating its own cause of action, Count IV is a detailed request for equitable relief. It is wholly dependent on the success of the other claims in the Complaint. Should the Clendenins prevail on those other claims, the relief sought in Count IV may be appropriate. The Motion to Dismiss this claim is therefore **DENIED**.

## IV. Conclusion

The Motion to Dismiss [Docket 22] is **GRANTED in part and DENIED in part**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    November 24, 2009

Joseph R. Goodwin, Chief Judge